ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| TAMAHARA E. CONCEPCIÓN NIEVES<br><br>RECURRIDA<br><br>V.<br><br>ARLENE JIMÉNEZ, ARMANDO HERNÁNDEZ, JUNTA DE DIRECTORES Y/O CONSEJO DE TITULARES DEL CONDOMINIO PASEO ABRIL<br><br>RECURRENTES | KLRA202400617 | *REVISIÓN ADMINISTRATIVA* procedente del DACO Oficina Regional de San Juan<br><br>Querella Núm.  C-San-2024-0018640<br><br>Sobre: CONDOMINIOS (Ley Núm. 104 de 25 de junio de 1958, según enmendada) |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de enero de 2025.

Comparecen ante *nos*, la Junta de Directores y el Consejo de Titulares del Condominio Paseo Abril y Arlene Jiménez, en su capacidad oficial de presidenta de la Junta de Directores del referido condominio (recurrentes), y nos solicitan que revisemos la *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACO) el 25 de septiembre de 2024 y notificada el 27 de septiembre de 2024. Mediante dicho dictamen, el DACO ordenó a la parte recurrida, entre otras cosas, a cesar y desistir de utilizar los estacionamientos de Tamahara E. Concepción Nieves (recurrida) para proveerle estacionamiento a cualquier visitante sea o no empleado y/o contratista de las recurrentes.

Por los fundamentos que expondremos a continuación, se *revoca* la *Resolución* de la cual se recurre.

**I.**

Surge del expediente ante *nos* que, el 24 de abril de 2024, la parte recurrida presentó una *Querella* ante el DACO. Alegó que la parte recurrente acostumbraba a dirigir a los contratistas del condominio a utilizar los estacionamientos de su propiedad sin su autorización. Acentuó que la parte recurrente tiene estacionamientos para los contratistas, pero ha insistido en utilizar los suyos para los contratistas una y otra vez, luego de la recurrida haber notificado que sus estacionamientos no son para el uso de contratistas ni ninguna otra persona. Indicó, además, que la presidenta de la Junta de Directores avaló expresiones de faltas de respeto de un titular, esposo de la tesorera de la Junta de Directores.

Así las cosas, el 7 de mayo de 2024, la parte recurrente presentó una *Contestación a la Querella*. En esencia, negó las alegaciones de la *Querella*. Así, aclaró que tan pronto se percataron de la situación han dado órdenes de remover el vehículo. Asimismo, añadieron que el condominio cuenta con un estacionamiento para contratistas.

Consecuentemente, el 25 de septiembre de 2024, notificada el 27 de septiembre de 2024, el DACO emitió una *Resolución*. En la misma y sin la celebración de una vista administrativa, se ordenó a los recurrentes a cesar y desistir de utilizar los estacionamientos de la recurrida para proveerle estacionamiento a cualquier visitante sea o no empleado y/o contratista de la parte recurrente. Además, el DACO dispuso que la parte recurrente deberá procurar remover de manera inmediata cualquier vehículo que se estacione sin autorización previa de la recurrida en los espacios correspondientes a sus estacionamientos. Les apercibió que impondría una multa de hasta $10,000.00 si volvían a permitir el uso del estacionamiento de la recurrida.

El 4 de octubre de 2024, la parte recurrente presentó ante el DACO una *Moción Solicitando Reconsideración.* Posteriormente, el 8 de octubre de 2024, el DACO emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la solicitud de reconsideración. Insatisfecho aun, el 1 de noviembre de 2024, la parte recurrente acudió ante *nos* mediante un *Recurso de Revisión de Resolución Administrativa* y alegó la comisión del siguiente error:

> **PRIMER ERROR: Erró DACO al resolver sumariamente, sin celebrar vista administrativa, ni emitir Orden previa a las recurrentes, cuando de la Contestación a la Querella surgen controversias de hechos que requieren la celebración de una vista administrativa.**

Examinado el *Recurso de Revisión de Resolución Administrativa,* este Tribunal emitió una *Resolución* el 7 de noviembre de 2024, concediéndole un término de veinte (20) días a la parte recurrida para que expresara su posición al recurso. Transcurrido el término sin el beneficio de la comparecencia de la parte recurrida, procedemos a resolver.

## II.

### A. Revisión judicial de determinaciones administrativas

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección*, 174 DPR 247 (2008).

La Sección 4.1 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de

Apelaciones. (3 LPRA sec. 9671). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson y otros v. Consejo de Titulares y otros*, 2024 TSPR 64, 213 ___ (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *Empresas Ferrer v. A.R.Pe,* 172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Voilí Voilá Corp., et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Voilí Voilá Corp., et al. v. Mun. Guaynabo*, *supra*; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección, *Transporte Sonell, LLC. v. Junta de Subastas*, 2024 TSPR 82, 214 DPR ___ (2024); *OCS v. CODEPOLA,* 202 DPR 842 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la

interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Torres Rivera v. Policía de PR,* 196 DPR 606 (2016). Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, 213 DPR ___ (2024). *González Segarra et al. v. CFSE,* 188 DPR 252 (2013).

Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación,

aunque ésta no tiene que ser la única o la más razonable. *Vargas Serrano v. Inst. Correccional,* 198 DPR 230 (2017). Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc. y otros, supra*; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía, supra*, las determinaciones de derecho pueden ser revisadas en su totalidad. *Torres Rivera v. Policía* de PR, *supra*, pág. 627.

Si bien es cierto que la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo, *Rebollo v. Yiyi Motors,* 161 DPR 69 (2004), los tribunales revisores descartarán el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía, supra.* Si la interpretación y la aplicación del derecho no es correcta, el foro apelativo está obligado a intervenir. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177 (2009). "En esas circunstancias, [el foro apelativo] cederá la deferencia que

merecen las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra". *Super Asphalt v. AFI y otro, supra*. Véase, además, *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra; Rolón Martínez v. Supte. Policía, supra*.

## B. Procedimiento adjudicativo

El Artículo II Sección 7 de la Constitución de Puerto Rico establece, entre otras cosas, que "[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes". Art. II. Sec. 7, Const. ELA, LPRA, Tomo 1. Así pues, existen dos (2) acepciones en la doctrina del debido proceso de ley: la sustantiva y la procesal. *PVH Motor. v. ASG*, 209 DPR 122 (2022); *Fuentes Bonilla v. ELA et al.*, 200 DPR 364 (2018); *Domínguez Castro et. al. v. E.L.A. I*, 178 DPR 1 (2010). Ambas vertientes protegen aspectos distintos. Por una parte, la vertiente sustantiva busca proteger y salvaguardar los derechos fundamentales de las personas. Mientras, la vertiente procesal obliga al Estado a garantizar que la interferencia en los intereses de libertad y propiedad del individuo se haga mediante un proceso justo e imparcial. *PVH Motor. v. ASG, supra*. Véase, además, *Fuentes Bonilla v. ELA, supra; Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881 (1993). Estas garantías constitucionales se extienden no solo al ámbito judicial sino también al administrativo. *PVH Motor v. ASG, supra; Aut. Puertos v. HEO*, 186 DPR 417 (2012).

A esos efectos, dado que las agencias administrativas ejercen una función adjudicativa, al interferir no solo con los intereses de libertad, sino también con la propiedad de los individuos, las garantías de un debido proceso de ley han sido extendidas a dichas agencias. *PVH Motor v. ASG, supra; Báez Díaz v. E.L.A*, 179 DPR 605 (2010). No obstante, los procedimientos en el ámbito administrativo no tienen la misma rigidez que los procedimientos adjudicativos ante los tribunales. *PVH Motor v. ASG, supra; Álamo Romero v. Adm.*

*de Corrección,* 175 DPR 314 (2009). Por tanto, el procedimiento adjudicativo ante las agencias debe ceñirse a las garantías mínimas del debido proceso de ley. *Íd.*

La dimensión procesal del debido proceso de ley en el contexto adjudicativo exige como mínimo: (1) la notificación adecuada del proceso; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de un abogado, y (6) que la decisión se base en el expediente. *PVH Motor v. ASG, supra.* Véase, además, *Vázquez González v. Mun. San Juan,* 178 DPR 636 (2010); *Garriga Villanueva v. Mun. de San Juan,* 176 DPR 182 (2009); *Rivera Rodríguez & Co. v. Lee Stowell, etc., supra.* Estas salvaguardas constitucionales se encuentran, de igual forma, reconocidas en la Carta de Derechos de la LPAU, específicamente, la Sección 3.1 de dicho estatuto (3 LPRA sec. 9641), enumera las garantías procesales que deben ser salvaguardadas en todo procedimiento adjudicativo celebrado ante una agencia, como lo son: la notificación oportuna de los cargos contra una parte, a presentar evidencia; a una adjudicación imparcial y que la decisión sea basada en el expediente. *PVH Motor v. ASG, supra.*

Cónsono con lo anterior, la Regla 11.1 del Reglamento Núm. 8034 del 4 de junio de 2011, Reglamento de Procedimientos Adjudicativos del DACO establece que:

> [e]l Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos.
> En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

**III.**

En el recurso ante *nos,* la parte recurrente nos plantea que erró el DACO al resolver sumariamente, sin celebrar vista

administrativa, ni emitir orden previa a las recurrentes, cuando de la *Contestación a la Querella* surgen controversias de hechos que requieren la celebración de una vista administrativa.

Según se desprende del tracto fáctico y procesal de este caso, así como de la totalidad del expediente ante nuestra consideración, el 24 de abril de 2024, la parte recurrida presentó una *Querella* ante el DACO. Adujo que la parte recurrente acostumbraba a dirigir a los contratistas del condominio a utilizar los estacionamientos de su propiedad sin su autorización. Esbozó que la parte recurrente tiene estacionamientos para los contratistas, pero ha insistido en utilizar los suyos para los contratistas una y otra vez, luego de la recurrida haber notificado que sus estacionamientos no son para el uso de contratistas ni ninguna otra persona.

Por su parte, el 7 de mayo de 2024, la parte recurrente presentó una *Contestación a la Querella*. En esta, negó las alegaciones de la *Querella*. Sostuvo que tan pronto se percataron de la situación han dado órdenes de remover el vehículo. Asimismo, agregó que el condominio cuenta con un estacionamiento para contratistas.

El 25 de septiembre de 2024, notificada el 27 de septiembre de 2024, el DACO emitió una *Resolución* mediante la cual ordenó a los recurrentes a cesar y desistir de utilizar los estacionamientos de la recurrida para proveerle estacionamiento a cualquier visitante sea o no empleado y/o contratista de la parte recurrente. Además, el DACO dispuso que la parte recurrente deberá procurar remover de manera inmediata cualquier vehículo que se estacione sin autorización previa de la recurrida en los espacios correspondientes a sus estacionamientos.

En desacuerdo, el 4 de octubre de 2024, la parte recurrente presentó ante el DACO una *Moción Solicitando Reconsideración*. Tras evaluar la solicitud de reconsideración, el 8 de octubre de 2024, el

DACO emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la misma.

Como corolario al derecho constitucional a un debido proceso de ley, la LPAU exige que se les brinde a las partes la oportunidad de presentar evidencia, a una adjudicación imparcial, a la notificación oportuna de los cargos o querellas o reclamos en su contra y el derecho a que la decisión sea basada en el expediente. Véase, Sección 3.1 de la LPAU, *supra.*

Además, la Regla 11.1 del Reglamento de Procedimientos Adjudicativos del DACO establece que:

> [e]l Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, **cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos.**
> **En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.** (Énfasis nuestro).

En ese sentido, en este caso, no se garantizaron todas las exigencias del debido proceso de ley, pues de una lectura minuciosa de la *Querella* y la *Contestación a la Querella*, se desprende la existencia de controversia sobre hechos pertinentes. Por lo cual, ante esta situación el DACO venía obligado a celebrar una vista adjudicativa y brindarle a la parte recurrente, entre otras cosas, la oportunidad de ser oída, el derecho a contrainterrogar los testigos y examinar la evidencia presentada en su contra y que la decisión se base en el expediente.

Asimismo, tal y como establece la Regla 11.1 del Reglamento de Procedimientos Adjudicativos del DACO, ante la existencia de una controversia real sobre hechos pertinentes, el DACO estaba obligado a celebrar una vista en reconsideración; lo cual no hizo.

Por consiguiente, la agencia recurrida laceró el debido proceso de ley de la parte recurrente y actuó de manera arbitraria, ilegal e

irrazonable. Así, sus acciones constituyeron un claro abuso de discreción.[1]

**IV.**

Por los fundamentos antes expuestos, *revocamos* la *Resolución* recurrida. Se devuelve el caso al DACO para que celebre la vista administrativa de acuerdo con lo aquí dispuesto.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[1] Hay litigios y controversias que, por su naturaleza, no se recomienda la resolución sumaria. Esto debido a que difícilmente en tales casos se puede reunir ante sí toda la verdad de los hechos a través de documentos que denotan controversias en los que el factor credibilidad juega un papel esencial, si no el decisivo, para llegar a la verdad. *E.L.A. v. P.M.C.*, 163 DPR 478 (2004).